UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CHARLES CAMAROTO,

                    Petitioner,

v.                                        Case No. 3:03-cv-851-J-99TEM

JAMES V. CROSBY, etc.;
et al.,

                    Respondents.
_____

## ORDER

### I. Status

Petitioner Charles Camaroto, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on October 3, 2003.  He challenges a 1998 state court (Flagler County, Florida) judgment of conviction for armed burglary of a dwelling on the following four grounds:

> Ground One:  The Flagler Co. Sheriff's [sic] - with intent - produced false evidence (a gun cabinet which was not stolen) and presented a [sic] testimony, police reports, of an item which never existed;

> Ground Two:  The state attorney's asst. st. attorneys allowing the false evidence (gun cabinet) into trial - as well as no weapon - and tried the case;

Ground Three: The State "incorperated" [sic]
paid for perjury by drug dealers and users as
witnesses; and,

Ground Four: The trial judge, Richard O.
Watson, has stadefastly [sic] denied any
hearings.

Petition at 5, 6, 8, 9.

Respondents filed a Response to Petition (Doc. #11)
(hereinafter Response) and a Response to the May 4, 2004, Order
(Doc. #24). They submitted exhibits in support of their
Responses.[1] Petitioner was instructed on how to properly respond
to a motion to dismiss and/or for summary judgment. See Court's
Order to Show Cause and Notice to Petitioner (Doc. #5), filed
October 27, 2003; Court's Order (Doc. #13), filed December 9, 2003.
Petitioner has properly responded to Respondents' Responses. This
case is now ripe for review.

## II. Procedural History

On May 8, 1998, Petitioner Charles Camaroto was charged, by
Information, in Flagler County Case No. 98-226-CF with armed
burglary of a dwelling. Ex. 1; Ex. 2, Transcript of the Jury Trial
Proceedings (hereinafter Tr.) at 51-52, 159. The specifications of
the charge stated:

---

[1] Respondents have submitted exhibits in support of their
Response (Doc. #11). Those exhibits will be referred to as "Ex."
Further, in compliance with this Court's Order (Doc. #23),
Respondents filed a Supplemental Appendix (Doc. #24), and these
exhibits will be referred to as "Supp. Ex."

> CHARLES CAMAROTO, on or about the 12th day of December, 1998, within Flagler County, Florida, did then and there unlawfully enter or remain in a certain dwelling, located at: 4475 County Road 90 West, in the County and State aforesaid, without the consent of Alfred Hays, the owner or custodian thereof, while harboring the intent to commit the offense of theft within said dwelling and did, in the course of committing said burglary, carry or arm himself with explosives or a dangerous weapon, to wit: Harrington and Richardson 12 Gauge Single Shot Serial Number AU576142.

Ex. 1. Petitioner represented himself at the trial after he filed a Motion to Discharge his attorney Sean K. Ahmed. Tr. at 28-29. On October 19-21, 1998, Petitioner was tried by a jury and was found guilty as charged on October 21, 1998. Id. at 884-85; Ex. 3. Richard O. Watson was the presiding judge. On February 26, 1999, Petitioner Camaroto was adjudicated guilty and sentenced to ten years imprisonment. See http://www.dc.state.fl.us/activeinmates (Florida Department of Corrections website); Ex. 4; Ex. 5; Ex. 6.

On July 14, 1998, Petitioner was charged, by Amended Information, in Flagler County Case No. 98-59-CF with possession of a firearm by a convicted felon, armed trespass on property other than a structure or conveyance, and aggravated assault upon a person sixty-five years of age or older. Ex. 7. On July 16-23, 1998, Petitioner was tried by a jury and was found guilty on July 23, 1998, of possession of a firearm by a convicted felon and armed trespass on property other than a structure or conveyance, but not guilty of aggravated assault upon a person sixty-five years of age

or older.  Ex. 8; Ex. 9.  He was represented by Sean H. Ahmed, and Sharon B. Atack was the presiding judge.   On February 26, 1999, Petitioner was adjudicated guilty and was sentenced to two years of incarceration on each of the two counts, which were to be served consecutively to each other and consecutively to the ten-year sentence   imposed   in   Case   No.   98-226-CF.      Ex.   10;   <u>see</u> http://www.dc.state.fl.us/activeinmates.

In August of 1999, Petitioner, through counsel, appealed his judgments and sentences (Case No. 98-226-CF and 98-59-CF) to the Fifth District Court of Appeal, raising the following issues in his Initial Brief:   (1) the motion to suppress, in Case No. 98-59-CF, should have been granted since the Flagler County Deputy had no authority to detain Petitioner, search the vehicle he had been in, or arrest him in Volusia County, and (2) standby counsel should have been appointed to assist Petitioner during the trial in Case No. 98-226-CF.  Ex. 11.  The State filed an Answer Brief.  Ex. 12. On January 18, 2000, the appellate court per curiam affirmed without a written opinion.  <u>Camarato v. State</u>, 751 So. 2d 594 (Fla. 5th DCA 2000); Ex. 13.  The mandate issued on February 4, 2000.

On June 13, 2000, Petitioner filed a Motion for Counsel on 3.850 Appeal/and Remand.  Ex. 14.  On June 17, 2000, he filed his first motion for post conviction relief (dated June 13, 2000). Supp.  Ex.  I.   On March 14, 2001, in addressing Petitioner's multitudinous filings, the trial judge stated in pertinent part:

4

It is difficult to tell exactly when
Defendant began to file his handwritten
motions, demands and unsupported accusations
defaming police officers, witnesses, assistant
state attorneys, defense attorneys and judges.
The Court files are filled with *hundreds of
pages* of handwritten documents.

. . . .

Documents he later filed reflects he
reported all of the attorneys, including his
Court Appointed Appellate Attorney and Wayne
Henderson, the St. Johns County lawyer
appointed to represent him, to the Florida
Bar, Judge Atack, Judge Watson, and Judge
Briese to the Judicial Qualifications
Commission. His rantings and accusations are
outrageous and an abuse of the system.

Now to the most recent motions filed by
Defendant.

In June of 2000 Defendant filed a "Motion
for Counsel on 3.850 Appeal/and Remand" in
these two cases, both of which have been
affirmed on appeal.

He alleges the Courts which tried him had
no jurisdiction because the witnesses
falsified evidence. He fails to allege any
supporting facts. He alleges completely
irrelevant matters, attaches transcripts of
hearings of his Volusia County case and
generally argues with the evidence presented
by the State and credibility of witnesses.
The juries heard the witnesses, including
Defendant, and decided who was telling the
truth.

His motion(s) are legally insufficient,
are without merit and further, Defendant
should be enjoined from filing any more
pleadings unless those pleadings are signed by
an attorney.

Ex. 15.

Petitioner appealed the trial court's denial of his Motion for Counsel on 3.850 Appeal/and Remand. Ex. 16; Ex. 17. The State filed a Motion to Dismiss, stating the appeal should be dismissed as an appeal from a non-appealable order. Ex. 18. The court ordered Petitioner to file a response to the motion to dismiss, and Petitioner responded on February 19, 2002. Ex. 19; Ex. 20. On March 4, 2002, the appellate court granted the motion to dismiss and dismissed the appeal.[2] Ex. 22.

On March 29, 2001, the appellate court denied Petitioner's March 5, 2001, Petition for Writ of Certiorari. Ex. 25; Ex. 26. On April 9, 2001, the appellate court denied Petitioner's March 5, 2001, Petition for Writ of Certiorari and Motion of Nunc Pro Tunc. Ex. 27; Ex. 28. On June 12, 2001, the appellate court denied Petitioner's March 5, 2001, Petition for Writ of Mandamus. Ex. 23; Ex. 24.

On January 31, 2002, Petitioner filed a second motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850. Ex. 44. On September 10, 2002, the trial court denied the motion as successive and without merit, stating:

> On January 31, 2002[,] Defendant filed a
> Motion for Post Conviction Relief in Case No.
> 98-226. The motion was brought to the
> attention of this Judge during the month of

---

[2] As noted by the Respondents, the statement in <u>Camaroto v. State</u>, 851 So.2d 772 (Fla. 5th DCA 2003), that no appeal was taken from the March 14, 2001, Order is not accurate. <u>See</u> Respondents' Response to May 4, 2004, Order (Doc. #24) at 2; Ex. 46.

6

August, 2002.   Although Defendant had previously copied this Judge with many of his lengthy handwritten motions, for reasons known only to the Defendant, he chose not to do so with this motion.

In May of 2002[,] Defendant filed a "Petition for Writ of Mandamus" with the Fifth District Court of Appeals requesting all kinds of inappropriate relief and not requesting a ruling on the pending Motion for Post Conviction Relief.   This Judge never received a copy of the "Order to Show Cause" which was apparently issued.

In June of 2000[,] among other motions Defendant filed a Motion for Post Conviction Relief.   A copy is filed with this order. That motion makes the same allegations as the motion the Court now has under consideration. All motions filed by Defendant in June of 2000 were denied by the Court by an order styled "Order Denying Defendant's Motions Filed in June of 2000" dated March 14, 2001, a copy of that order is filed with this order.

That order summarizes the history of Defendant's legal efforts - frivolous, defamatory gobbledygook accusing every defense attorney, prosecutor, witness and Judge of criminal behavior.   Defendant did not appeal that order[3].

**The current Motion for Post Conviction Relief is a repeat of the allegations contained in his June 2000 Motion for Post Conviction Relief.   The motion before the Court is a successive motion.   It fails to allege new or different grounds for relief. His current Motion for Post Conviction Relief is without merit.**

---

[3] Petitioner did appeal the trial court's denial of his Motion for Counsel on 3.850 Appeal and Remand; however, the appellate court granted the State's Motion to Dismiss the appeal for lack of jurisdiction.   See Response to May 4, 2004, Order (Doc. #24) at 2; Ex. 16; Ex. 18; Ex. 22.

7

> The Court again recommends to the Appellate Court that an order be entered prohibiting the Clerk from accepting pleadings from Defendant unless signed by a member of the Florida Bar.

Ex. 45 at 1-2 (emphasis added).

On October 8, 2002, Petitioner filed a Petition for Writ of Habeas Corpus in the Supreme Court of Florida, and the court treated the petition as an appeal from the trial court's September 10, 2002, denial of his January 31, 2002, motion for post conviction relief. Ex. 43. On January 22, 2003, the Supreme Court of Florida transferred the case back to the Fifth District Court of Appeal for resolution of the appeal. Id. On July 3, 2003, the appellate court affirmed the denial of that motion as successive. Camaroto v. State, 851 So.2d 772 (Fla. 5th DCA 2003); Ex. 46. Rehearing was denied on August 8, 2003, and the mandate issued on August 27, 2003. Ex. 47; Ex. 48. Meanwhile, Petitioner was also seeking review in the United States Supreme Court, which denied his Petition for Writ of Certiorari on April 28, 2003. Ex. 49; Ex. 50; Ex. 51.

On March 11, 2002, the appellate court denied Petitioner's February 6, 2002, Petition for Writ of Mandamus. Ex. 29; Ex. 30. On April 5, 2002, the Supreme Court of Florida dismissed Petitioner's petition for discretionary review for lack of jurisdiction. Camaroto v. State, 817 So.2d 845 (Fla. 2002); Ex. 31. On October 9, 2002, the Supreme Court of Florida dismissed his

8

attempt at another review of that dismissal.   <u>Camaroto v. State</u>, 829 So.2d 917 (Fla. 2002); Ex. 32; Ex 33.

On May 17, 2002, the Fifth District Court of Appeal denied Petitioner's March 20, 2002, Petition for Writ of Mandamus.   Ex. 34.  On May 28, 2002, Petitioner filed another Petition for Writ of Mandamus.   Ex. 38.   The appellate court consolidated Petitioner's multitudinous appeals, stating "the claims advanced are redundant, disorganized, unnecessarily voluminous, and constitute what amounts to an abuse of judicial process . . . ."   Ex. 39.   Further, the court ordered Petitioner to show cause "why he should not be banned from filing further pro se motions or extraordinary petitions for writs . . . ."  <u>Id</u>.  On November 22, 2002, the Fifth District Court of Appeal stated:

> The several Petitions for Writ of Mandamus are hereby denied. Further, the petitioner is banned from filing further pro se motions or extraordinary petitions for writs in the Court. *See Isley v. State*, 652 So.2d 409, 411 (Fla. 5th DCA 1995). His successive claims, taken in the context of petitioner's other appeals/petitions, constitute an abuse of process. Any further pleadings filed by Charles Camaroto in this court must be reviewed and signed by an attorney, licensed to practice law in this state. The clerk of the court of the Fifth District Court of Appeal is directed not to accept any further pro se filings from the petitioner, except that he will be allowed to appeal an adverse ruling on any pending Rule 3.850 or Rule 3.800(a) motion if the petitioner properly complies with the requirements of the Florida Rules of Criminal Procedure and the Florida Rules of Appellate

Procedure.  *See* Fla. R. Crim. P. 3.850(c)(6);
*cf. Basse v. State*, 740 So.2d 518 (Fla. 1999).

<u>Camaroto v. Pomar</u>, 830 So.2d 955 (Fla. 5th DCA 2002); Ex. 40.  On January 2, 2003, the appellate court denied Petitioner's December 23, 2002, motion for rehearings.  Ex. 41; Ex. 42.

On August 8, 2003, Petitioner filed his third motion for post conviction relief.  Supp. Ex. II.  On August 12, 2003, the trial judge denied the motion, stating:

> This case was reviewed by the Court on a pleading, styled "Motion to Be Heard," filed by Defendant with the Court on August 8, 2003.  Included with the motion are copies of two Motions for Post Conviction Relief previously filed by the Defendant and previously denied by the Court.
>
> One of the motions is marked "Band #1" and the other is marked "Band #2."  On the paper band of the motion marked Band #1 Defendant wrote:
>
>> "This is the 3.850 Entered and Marked 'Filed' on January 31, 2002 by the Clerk of the Court."
>
> On the paper band of the motion marked Band #2 Defendant wrote:
>
>> "This is [sic] the documents Judge Watson Reviewed and Returned back to me - they were sent - Envelope and in the same order.  They are not of my 3.850."
>
> Defendant's Motion to Be Heard alleges that the 468 page 3.850 Motion for Post Conviction Relief filed January 31, 2002,

10

"Was to be presented
before the Honorable
Judge Richard O. Watson.
It was never presented to
him."

That statement is untrue. The Court
reviewed the original 3.850 Motion for Post
Conviction Relief consisting of approximately
468 pages filed January 31, 2002 and which is
marked Band #1 by the Defendant. After
reviewing each page of the document the Motion
was denied by an Order entered on September
10, 2002. That order was styled:

ORDER DENYING DEFENDANT'S
POST-CONVICTION MOTION
FOR RELIEF FILED JANUARY
31, 2002.

That order was affirmed on appeal.

Supp. Ex. III.[4] Petitioner did not appeal the order. See Response

to May 4, 2004, Order at 3, 4.

The Petition for Writ of Habeas Corpus (dated September 29,

2003) and filed in this Court on October 3, 2003, appears to be

timely filed. Response at 5. This case is now ripe for review.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the

reasons set forth more fully below, concludes Petitioner is not

entitled to an evidentiary hearing. A habeas corpus petitioner is

_____

[4] In Petitioner's exhibits submitted with his Petition (Doc.
#1), he includes an Order Denying Defendant's Motion for Rehearing
and Notice of Habeas Corpus Appeal, in which Judge Watson, on
September 9, 2003, stated he read every page of the January 31,
2002, motion for post conviction relief and "does not know why the
Defendant alleges the Court read the wrong motion."

entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV. Findings of Fact and Conclusions of Law

Petitioner states, in the Petition (Doc. #1) now before this Court, that he raised grounds one, two and three on direct appeal and in his January 31, 2002, and August 8, 2003, motions for post conviction relief. Petition at 5-8. He claims he raised ground four only in his January 31, 2002, and August 8, 2003, motions for

post conviction relief because counsel refused to raise the issue on direct appeal. Id. at 9-10.

Respondents contend, and this Court agrees, that Petitioner did not raise grounds one, two and three on direct appeal. Response at 6. As previously set forth in the procedural history (see Section III), Petitioner, through counsel, appealed his judgments and sentences (Case No. 98-226-CF and 98-59-CF) to the Fifth District Court of Appeal, raising only two issues in his Initial Brief: (1) the motion to suppress, in Case No. 98-59-CF, should have been granted since the Flagler County Deputy had no authority to detain Petitioner, search the vehicle he had been in, or arrest him in Volusia County, and (2) standby counsel should have been appointed to assist Petitioner during the trial in Case No. 98-226-CF. Ex. 11. Thus, none of the issues raised by Petitioner in the Petition now before this Court were raised on direct appeal.[5]

Respondents contend, and this Court agrees, that Petitioner failed to present his claims in state court in a procedurally correct manner, and the grounds are now procedurally barred. See Response at 7. A petition for writ of habeas corpus should not be

---

[5] While Petitioner may have raised the issues in *pro se* letters and/or motions during the pendency of his direct appeal, such filings are generally considered a "nullity" under Florida law since Petitioner was represented by counsel on direct appeal. See Logan v. State, 846 So.2d 472, 476 (Fla. 2003). Counsel on direct appeal raised the issues that he opined had merit.

13

entertained unless the petitioner has first exhausted his state remedies. <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 349, <u>reh'g denied</u>, 490 U.S. 1076 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1281 (11th Cir. 2003) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" <u>Turner</u>, 339 F.3d at 1281 (quoting <u>O'Sullivan</u>, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992). A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), cert. denied, 525 U.S. 963 (1998)).

Here, Petitioner could have and *should* *have* raised these claims on direct appeal. It would be futile to dismiss this case to give him the opportunity to exhaust these claims on direct appeal. Thus, Petitioner has procedurally defaulted these claims.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

Here, Petitioner has stated that appellate counsel refused to raise ground four on direct appeal.[6] Procedurally defaulted claims of ineffective assistance of counsel cannot serve as cause to

---

[6] Appellate counsel ultimately must choose to pursue those claims that he opines are most likely to prevail and winnow out the arguments he believes are less persuasive. See Johnson v. Alabama, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied, 535 U.S. 926 (2002). Further, appellate counsel must be extremely selective about the issues to be argued on appeal. Id. (citation omitted). Petitioner's claim that the trial judge "steadfastly" denied hearings and counsel is not an issue that would have been successful on appeal to the Fifth District Court of Appeal.

excuse the default of another substantive claim.   See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) (holding that a federal court reviewing a habeas claim cannot consider an ineffective assistance of counsel claim as cause for a procedural default of another claim if the ineffective assistance claim itself was procedurally barred); Nelson v. Schofeld, 371 F.3d 768, 770 n.4 (11th Cir. 2004) (citations omitted).   "If the ineffective assistance claim is defaulted, then a petitioner must demonstrate independent cause and prejudice excusing the default of the ineffectiveness claim before that claim can be asserted as cause in relation to a second, substantive claim."   Hill v. Jones, 81 F.3d at 1031 (citations omitted).

Here, Petitioner never presented this ineffective assistance of appellate counsel claim to the state courts.   Further, it is too late for Petitioner to return to state court to exhaust this claim. See Fla. R. App. P. 9.141(c)(4)(B) (providing that a petition alleging ineffective assistance of appellate counsel shall be filed in the appellate court to which the appeal was taken no more than two years after the conviction becomes final on direct review). Thus, he has procedurally defaulted this ineffective assistance of appellate counsel claim.   Petitioner has not shown independent cause and prejudice excusing the default of the ineffective assistance of appellate counsel claim.   Thus, the alleged

ineffectiveness of his appellate attorney cannot constitute cause for the default.

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). "In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make a colorable showing of actual innocence." Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002) (citations omitted), cert. denied, 540 U.S. 956 (2003). The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not mere legal insufficiency. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002); Sawyer v. Holder, 326 F.3d 1363, 1367 (11th Cir.), cert. denied, 540 U.S. 900 (2003). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson, 256 F.3d at 1171 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Id. (citation omitted) (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of

such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected.").

Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  For these reasons, the Court need not review the merits of Petitioner's grounds.[7]

Even assuming that procedural default is not applicable, the claims are without merit.  At the trial, the victim testified to the items stolen from his residence, including knives and guns. Petitioner had been to his residence on a previous occasion. Petitioner's step-daughter (Robin Harrison) testified that Petitioner came to her home with a large number of knives and said he also had firearms and asked if she wanted to purchase them.  She testified that Petitioner had admitted committing the crime. Lonnie Harrison testified that he purchased ten guns from Petitioner for $1000 and later turned those guns over to the police.  The Harrington and Richardson 12 gauge single shot gun was among the weapons recovered from Harrison and identified by Hays. Vincent Stagmer testified that Petitioner showed him weapons inside of a side compartment of a trailer and told him that he stole the

---

[7] Petitioner claims he raised the grounds in his second motion for post conviction relief (Ex. 44); however, the trial judge denied the motion as successive and without merit (Ex. 45), and the appellate court affirmed the denial of that motion as successive. Camaroto v. State, 851 So.2d 772 (Fla. 5th DCA 2003); Ex. 46.

guns, but they could not be traced.  Petitioner asked Stagmer if he wanted to purchase the guns.  Petitioner's wife testified that Petitioner borrowed her car and returned with a cabinet in the trunk of the car.[8]  She stated Petitioner pried it open with a screwdriver, and they found guns inside the cabinet.  She also noticed knives in the trunk of her car.  She later helped Petitioner put the empty cabinet back in the trunk of the car, and then they later drove to the end of Avenue K and threw the cabinet in the water.  Detective Maronski testified that Petitioner's wife directed the police to a canal where a cabinet, identified as the one belonging to Hays, had been discarded by her and Petitioner.

Thus, after a thorough and exhaustive review of the trial transcript and the record, it is clear that the State presented sufficient evidence against Petitioner and that Petitioner had the opportunity to cross examine the witnesses to challenge their credibility.  Further, Petitioner testified on his own behalf and therefore explained to the jury that Lonnie Harrison had brought the gun cabinet to his home and that Lonnie had told him that he and Stagmer had committed the burglary.

It was the jury's duty to decide which evidence was reliable and credible.  Resolution of conflicts in testimony is the province of the jury.  The jury assessed the credibility of the witnesses

---

[8] The cabinet was admitted as State's exhibit one.  Tr. at 350, 503-04.

and weighed the evidence. Here, the jury was present in the courtroom, observed all of the witnesses and chose to believe the State's witnesses rather than Petitioner. The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of armed burglary of a dwelling beyond a reasonable doubt.[9] The Court, here, answers that question in the affirmative. Based on the evidence presented at the trial, any rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of armed burglary of a dwelling. Thus, Petitioner's contentions are without merit.[10]

### V. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

---

[9] Jackson v. Virginia, 443 U.S. 307, 319 (1979).

[10] To the extent that Petitioner contends that the trial judge failed to conduct a hearing on Petitioner's request to represent himself, this claim is without merit. Judge Watson conducted an extended Faretta inquiry prior to the trial on October 19, 1998. See Faretta v. California, 422 U.S. 806 (1975); Tr. at 8-29.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

   **DONE AND ORDERED** at Jacksonville, Florida, this ___3rd___ day of ~~September,~~ *October* 2005.

 

 

_____
UNITED STATES DISTRICT JUDGE

sc 9/29
c:
Charles Camaroto
Ass't Attorney General (Golden)